# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| JEFFREY LEE HELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:12-CV-457 |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Jeffrey Lee Held ("Held") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Held alleges that the ALJ misstated the record, failed to adequately consider the opinion of his treating physician, reached a conclusion inconsistent with the testimony of the vocational expert, and improperly failed to address the opinion of Held's retained vocational expert.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that the Administrative Law Judge ("ALJ") misinterpreted the findings of a functional capacity exam, and thus failed to properly consider that evidence as ordered by the Appeals Council, and failed to fully consider and weigh the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

relevant evidence of record as required by the regulations. As such, I **RECOMMEND DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 14), **GRANTING in part** Held's Motion for Summary Judgment (Dkt. No. 11), and reversing and remanding this case for further administrative consideration consistent with this Report and Recommendation.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Held failed to demonstrate that he was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Held bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent

him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Held was born on January 16, 1963 (Administrative Record, hereinafter "R." at 44), and is considered a "younger individual" under the Act. 20 C.F.R. § 404.1563(c). Held is insured through December 31, 2012 (R. 19); therefore he must show that his disability began before the end of his insurance period, and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Held has a high school diploma, and previously worked as a welding/fabrication repair person and truck heavy

equipment mechanic, both of which were heavy exertional, skilled jobs. R. 44–45. Held stopped working in February 2007, after an injury in the workplace. R. 44–45. Held reported that during the relevant period, he had the capacity to perform light chores, light shopping, pay bills, give his wife injections for her multiple sclerosis, and help care for his two teenage children. R. 270–72.

### Claim History

Held filed for DIB on August 14, 2007, claiming that his disability began on February 28, 2007, due to low back pain radiating into the right leg post lumbar spinal fusion. R. 233–39. The state agency denied his application at the initial and reconsideration levels of administrative review. R. 126–27, 132–33. On August 14, 2009, ALJ Geraldine Page held a hearing to consider Held's disability claim. R. 72–102. Held was represented by an attorney at the hearing, which included testimony from vocational expert John Newman. R. 98. On August 28, 2009, the ALJ entered her decision denying Held's claims. R. 109–22. In her decision, the ALJ took noted the July 27, 2009 report from Held's treating physician, Raymond V. Harron, D.O., which found Held capable of performing at most sedentary work on a part-time basis. The ALJ noted that Dr. Harron's findings were based in part on a functional capacity exam report ("FCE report") that was not contained in the record. The ALJ thus gave Dr. Harron's report little weight, and found Held capable of performing a range of light work.

Held requested review by the Appeals Council, and submitted the FCE report upon which Dr. Harron relied in support of his claim. On September 4, 2010, the Appeals Council vacated the ALJ's decision and remanded the matter, instructing the ALJ to consider the FCE report. R. 124–25. The Appeals Council further instructed the ALJ to give additional consideration to the treating source opinion of Dr. Harron, and explain the weight given to his opinion. The Appeals

Council suggested that the ALJ request additional evidence and/or clarification from Dr. Harron with regard to his opinion of Held's functional capacity. R. 124–25.

The ALJ held a second hearing on March 9, 2011. Held was represented by an attorney at the hearing, which included testimony from medical expert H.C. Alexander III, M.D. R. 39–71. On March 24, 2011, the ALJ entered her decision denying Held's claims. R. 19–33. The ALJ found that Held suffered from the severe impairments of lumbar disc bulge on MRI, facet hypertrophy status post right inner body fusions with partial vertebectomy, demyelinating sensory polyneuropathy on EMG, lumbar degenerative disc disease on CT scan, questionable left paracentral herniated nucleus pulpous, and a history of ankle sprains. R. 21. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 23–24. The ALJ found that Held's depression and anxiety were non-severe impairments. R. 22.

The ALJ further found that Held retained the residual functional capacity ("RFC") to perform light work with the following exceptions: stand or walk three hours in an eight hour day for up to twenty minute intervals; occasional balancing, kneeling, crouching, crawling, stooping and climbing ramps or stairs; no climbing ladders, ropes or scaffolds; no work around unprotected heights; and avoid concentrated exposure to extremely cold temperatures, hazardous machinery or vibrating surfaces. R. 28. In forming this RFC, the ALJ considered the FCE report, and interpreted it as finding Held capable of "light work, with frequent sitting, infrequent standing and walking, frequent forward and overhead reaching, and as able to perform fine hand movements, and operate arm and leg controls." R. 26, 31. The ALJ again considered Dr. Harron's opinion that Held can only perform sedentary work on a part-time basis. The ALJ found Dr. Harron's opinions to be "not fully supported," and instead relied upon the opinions of

the state agency physicians and medical expert Dr. Alexander, who found Held capable of light work.

The ALJ determined that Held could not return to his past relevant work as welding/fabrication repair person and truck heavy equipment mechanic (R. 32), but that Held could work at jobs that exist in significant numbers in the national economy; namely, ticket checker, telephone quotation clerk, and general office clerk. R. 32. Thus, the ALJ concluded that he was not disabled. R. 33. On August 2, 2012, the Appeals Council denied Held's request for review (R. 1–3), and this appeal followed.

## ANALYSIS

Held argues that the ALJ erred in her second decision by 1) misstating the findings of the FCE; 2) failing to adequately consider and address the opinions of her treating physician Dr. Harron; 3) reaching a conclusion that is inconsistent with the testimony of the vocational expert; and 4) failing to address the findings of Held's retained vocational expert. Having reviewed the record as a whole, I agree that the ALJ misinterpreted the results of the FCE report, and relies upon that error to support the remainder of her decision. Thus, I recommend that the case be remanded to the ALJ for full and proper consideration of the FCE report, as previously directed by the Appeals Council.

## FEC Report

The parties agree that Held suffers from severe impairments relating to degenerative disc disease in his lumbar spine. However, the record contains conflicting medical opinions with regard to Held's functional limitations as a result of those severe impairments. The ALJ's decision in this case revolves around those conflicting medical opinions and specifically the FCE report, which are set forth in detail below.

Held's neurosurgeon, Dr. Harron, treated Held for back pain beginning in 2005, and performed a lumbar spinal fusion in July 2007. On October 16, 2007, three months after Held's surgery, state agency physician Richard Surrusco, M.D., reviewed Held's medical records, and found that he could perform light work with occasional climbing of ramps and stairs, stooping, kneeling, crouching and crawling, but no climbing ladders, ropes and scaffolds, and no exposure to hazards. R. 412–18. Two weeks later on October 29, 2007, state agency physician Kumar Swami, M.D., reviewed Dr. Surrusco's report and agreed with his findings. R. 419–21. A second state agency physician, Frank Johnson, M.D., reviewed Held's medical records on February 4, 2008, and arrived at the same RFC as Drs. Surrusco and Swami. R. 478–84.

Dr. Harron continued to treat Held's back pain post-surgery. Dr. Harron's records reflect Held's slow but progressive improvement following surgery. R. 386, 440, 434–436, 438. On November 4, 2008, Dr. Harron wrote a report to Guardian Insurance Company with regard to Held's long-term disability claim. R. 489–90. Dr. Harron noted that Held was still having intermittent symptoms in his back and legs, and experiencing difficulty with bowel function. R. 489. Dr. Harron stated that Held was ambulatory, but his activities were limited because of back and leg pain. Dr. Harron found Held capable of lifting less than 10-15 pounds, and incapable of prolonged standing, sitting or walking. R. 490. In a later opinion, Dr. Harron stated that Held reached his maximum medical improvement in October 2008. R. 492–93.

On May 20, 2009, Bill Mercer, P.T., performed a functional capacity evaluation on Held, and submitted an FCE report. R. 321–22, 494–515. The FCE report consisted of Mr. Mercer's conclusions from the testing, set out in narrative form (R. 321–22), with the testing results and graphs attached (R. 494–515).[2]

---

[2] Although these documents contain the same date, came from the same medical source and state that they are attached together, they are broken apart and located in separate portions of the record. See R. 321, 494, 510.

In his narrative report dated May 20, 2009, under the heading "FCE RESULTS," Mr. Mercer writes,

> The results indicate that Mr. Held may be physically capable of work at the LIGHT Physical Demand Level on a part-time basis. His specific acceptable Leg Lift capability was 28.0 lbs. The detailed results are on the enclosed FCE form. These lifts were accomplished with progressing complaints of pain as well as a slowing down of his activity. This examiner does not believe that Mr. Held could maintain productivity in a competitive employment situation.

R. 321. Mr. Mercer described Held's pain tolerance as follows:

> Mr. Held does demonstrate a HIGH PAIN PROFILE with 82% of the pain questionnaires scored as HIGH. His initial subjective pain rating was given as 5/10 and this did escalate to 8/10 by the end of our session. His work pace and movement patters did slow down as his pain escalated. Pain definitely negatively affected his activity output on this date.

He stated that the test showed "outstanding" consistency of effort with "excellent" validity. R. 322.

On July 27, 2009, Dr. Harron reviewed the FCE results, and set forth his opinion as to Held's functional capacity. R. 492–93. Specifically, Dr. Harron stated that Held showed slow but progressive initial improvement following his surgery, and reached his maximum medical improvement by October 2008. Dr. Harron found that Held suffered from advanced degenerative joint disease, and continued to complain of low back and leg pain that was frequently exacerbated to severe level with minimal activity. R. 492. Upon exam, Dr. Harron repeatedly noted lumbar paravertebral muscle spasm and moderately decreased range of motion of the lumbar spine. R. 492. Dr. Harron mentioned that the FCE results were consistent with Held's subjective reports of his capabilities—that he cannot stand or walk for more than fifteen minutes at a time, sit for more than one hour, and can only lift and carry about ten to fifteen pounds without significantly increasing his pain level. R. 492. Dr. Harron noted that the FCE

8

indicated that Held was capable of lifting the ten to fifteen pound range and did not indicate a specific sitting limitation; however, the test also revealed a high pain level, and that pain negatively affected Held's activity output. R. 492–93.

Dr. Harron specifically and extensively relied upon the FCE and the findings contained in the narrative portion of the FCE to determine Held's functional capabilities. Specifically, Dr. Harron described the interrelationship between the FCE narrative conclusion and his opinion as follows:

> Functional Capacities Evaluation testing revealed results consistent with his complaints. Testing revealed that activities requiring standing, walking, bending, or squatting should be limited to no more than infrequently. Although the testing indicated he is capable of lifting to the 10-15 pound range, and did not indicate a specific limitation with regard to sitting, the tests did reveal a high pain level, with his pain rating escalating from a 5/10 to a 8/10 by the end of the testing session. His work pace and movement patterns did slow down as his pain escalated, indicating that pain definitely negatively affected his activity output. Moreover, testing showed outstanding consistency of effort with excellent validity, which lends great credibility to his subjective complaints.
>
> Taking into consideration my clinical findings, Mr. Held's subjective complaints, and functional capacities evaluation testing, it is my opinion that although Mr. Held may be capable of performing sedentary work on a part time basis 3-4 hours per day, he would not be capable of doing so full time on a regular and continuing basis and could not maintain productivity in a competitive work environment.

R. 492–493.

On March 4, 2011, Jeremy Llavore, M.D., a physician who treated Held for back pain on September 24, 2010, answered written interrogatories related to Held's functional capacity. Dr. Llavore indicated that Held is only capable of performing part-time work at the sedentary level, he would have to alter positions to frequently alleviate pain, and he is not capable of maintaining a consistent work pace or to persist at tasks for more than short periods. R. 534.

9

At the second administrative hearing, the ALJ sought testimony from medical expert Haddon Christopher Alexander, III, M.D., who reviewed Held's treatment records. R. 46–57. When asked, "are you able to say, based on your education, experience and your training and your review of the record what the claimant's physical impairments are?" Dr. Alexander replied, "Yes, I can, very definitely up through his surgery. I'm going to have a problem beyond that, from the, as I'd already stated [Exhibits] 20, 21, 22 and now 23F, as to what that might be." R. 50. When asked to determine if Held's impairments impose any restrictions on his functioning, Dr. Alexander found that Held was capable of lifting and carrying ten pounds frequently and twenty pounds occasionally, sitting for six hours in an eight hour workday, standing and walking for twenty minute intervals for a total of three hours in an eight-hour workday, and could not climb ladders, ropes or scaffolds, or work around hazards. R. 52–54. Dr. Alexander then qualified, "that's based, basically, on, you know, what little I have to go with from July of '07, because Dr. Heron [sic] talked about needing to have a CT myelogram and an EMG, and I'd agree with both of those opinions, but he-- the Claimant was never able to obtain those..." R. 54. There is no reference by Dr. Alexander to the FCE report. In fact, aside from a brief statement by Held's attorney that it the FCE report was now in the record, it was not mentioned or discussed during the second administrative hearing.

In the ALJ's decision at issue, the ALJ gave great weight to the state agency opinions developed within months of Held's surgery in 2007 and Dr. Alexander's testimony that Held is capable of light work. R. 31. The ALJ gave little weight to Dr. Llavore, finding his opinion unsupported by his one treatment record. R. 31. With regard to Dr. Harron, the ALJ gave great weight to his findings concerning Held's standing and walking limitations, but no weight to the remainder of his opinion, contrasting it with the FCE report. R. 31.

10

Given the evidence set forth above, it appears that the ALJ mistakenly interpreted the FCE results as finding that Held was capable of light work on a full-time basis. The ALJ discusses the FCE report twice in her decision, and both times describes the findings as,

> the claimant was assessed as able to perform light work, with frequent sitting, infrequent standing and walking, frequent forward and overhead reaching, and as able to perform fine hand movements, and operate arm and leg controls. Mr. Mercer said the claimant's perceived pain over a prolonged period might prevent him from maintaining consistent attendance and work rate (Exhibit 19-F-1).

R. 26, 31. This is a verbatim recitation of a portion of the test results of the FCE, which lists Held's work classification as "light." R. 494. However, the narrative portion of the FCE (contained separately in the record) clarifies Mercer's analysis of the data, and evidences his conclusion that Held can perform certain skills at a light level, but that the impact of those activities on Held's pain and rate reduces him to a part-time capability. R. 321. Mercer's written opinion very clearly states that Held is capable of work at the light physical demand level on a *part-time* basis. R. 321. Mercer further stated that Held "cannot maintain productivity in a competitive employment situation."

The ALJ does not refer to the narrative portion of the FCE in her decision, nor does she cite to its pages in the record.[3] The ALJ appears to disregard the "part-time" qualifier contained in the FCE, and instead interprets the FCE as finding Held capable of light work on a full-time basis. It is unclear if the ALJ was unaware of, or failed to consider the narrative portion of the FCE,[4] or if she considered the full report and discredited Mr. Mercer's interpretation of the test

---

[3] The narrative portion of the FCE is contained at Exhibit No. 14E of the record. When discussing the FCE, the ALJ only references Exhibit No. 19F, the testing results of the FCE report. R. 26, 31.

[4] If the one page of the FCE cited by the ALJ is considered in a vacuum, there is no indication that Held is limited to light work only on a part-time basis. That fact is evident when the FCE report is considered as a whole.

11

results without providing explanation.[5] What is clear is that the ALJ's declaration that the FCE demonstrates that Held is able to perform light work on a full time basis is plainly contradicted by Mercer's narrative report summarizing the FCE results.

As noted above, the ALJ's medical expert, Dr. Alexander, makes no reference to the FCE during his testimony, aside from a brief comment that "I have [Exhibit] 19F." R. 48. It is thus unclear whether the ALJ or the medical expert upon whose opinion she relied were aware of or considered the part-time limitation set forth in the FCE report.

The ALJ's misinterpretation of the FCE report that Held can perform light work on a full-time basis, rather than a part-time basis constitutes error. An ALJ is required to consider all of the relevant evidence in the administrative record. "Before a court may find that an ALJ's decision is supported by substantial evidence, the ALJ's decision must analyze all the relevant evidence and sufficiently explain his findings and rationale. The court faces a difficult task in applying the substantial evidence test when the ALJ's opinion does not show that the ALJ properly considered all of the relevant evidence." Paxton v. Astrue, 2012 WL 3011017, at *1 (W.D. Va. July 23, 2012)(internal citations omitted). See also Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439 (4th Cir. 1997)("Before we can determine whether substantial evidence supports an administrative determination, we must 'first ascertain whether [the agency] has discharged [its] duty to consider all relevant evidence.'")(citing Jordan v. Califano, 582 F.2d 1333, 1335 (4th Cir. 1978)); Saul v. Astrue, 2011 WL 1229781, at * 4 (S.D. W.Va. March 28, 2011)(substantial evidence standard was inapplicable where ALJ "utterly failed" to acknowledge the existence of a treating physician's opinion). The Appeals Council remanded this case to the

---

[5] The Commissioner argues that the narrative portion of the report simply references the findings from the testing portion that are relied upon by the ALJ, and thus that the ALJ did not misinterpret the report. However, the Commissioner agreed at the hearing that the testing portion of the FCE finds that Held can only work on a part-time basis. While the ALJ is not bound to accept Mr. Mercer's conclusion, the ALJ must address it and explain why it was not given weight. The ALJ does not do so here.

ALJ with specific instructions to consider the FCE report, and it is the only in-depth evaluation of Held's functional capacity in the record. Thus, its findings are clearly relevant to determine Held's functional capacity.

The fact that the ALJ erred in her interpretation of the FCE does not necessarily warrant a remand of the case. If the court finds the error to be "harmless," then it should nonetheless affirm the ALJ's decision. See Cameron v. Astrue, Civ. Action No. 7:10cv0058, 2011 WL 2945817, at *3 (W.D. Va. July 21, 2011)("'Procedural perfection in administrative proceedings is not required' and courts should vacate a judgment unless the substantial rights of a party have been affected.")(citing Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)). Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error. See Austin v. Astrue, Civ. Action No. 7:06cv00622, 2007 WL 3070601, at *6 (W.D. Va. Oct.18, 2007) (citing Camp v. Massanari, 22 Fed. App'x 311 (4th Cir. 2001)(citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000)). In this inquiry, the court looks carefully at the evidence to determine whether it can predict with great confidence what the result will be on remand. McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir. 2011). The harmless error standard is not an exercise in rationalizing the ALJ's decision and substituting the court's hypothetical explanations for the ALJ's inadequate articulation. The court has already concluded that the ALJ erred. The question is now a prospective one—whether the court can say with great confidence what the ALJ would do on remand—rather than retrospective. Id.

Thus, the court must determine whether it is inconceivable that the ALJ would have reached a different conclusion absent the error in this case. Given the conflicting medical opinions in the record, Dr. Harron's reliance on the FCE results in his opinion, and the fact that the physicians' opinions upon which the ALJ relied (Drs. Surrusco, Swami, Johnson and

Alexander) did not consider the entire FCE report and narrative conclusions, I cannot find the ALJ's misinterpretation of the FCE report to be harmless error.

The ALJ gives "great" weight to the opinions of the state agency physicians finding Held capable of a range of light work. R. 31. However, the state agency physicians' record reviews were performed in 2007, only a few months after Held's back surgery. The state agency opinions were all rendered prior to the FCE report, which the Appeals Council specifically required the ALJ to consider on remand. They were also performed prior to the final assessments by Drs. Harron and Llavore, and thus did not have the benefit of these assessments. "Record reviews are of little value when the record is incomplete, as it was here." Richardson v. Astrue, Civ. Action No. 7:10-cv-0023, 2011 WL 4351608, at *3 (Sept. 15, 2011).

The ALJ also gives "great" weight to the testimony of medical expert Dr. Alexander. The ALJ states that Dr. Alexander's opinions were "based on the pre-operative period, beginning in February 2007, to the present." R. 29. Dr. Alexander's testimony, however, is not so clear. He states that his opinion reflects Held's impairments at the time of the surgery (four years before the second administrative hearing), but that he's "going to have a problem beyond that." R. 50. It is uncertain whether Dr. Alexander's opinion was intended to reflect Held's functional limitations after 2007. Also, as noted above, there is no indication in the record that Dr. Alexander considered the findings of the FCE report when rendering his opinion.

The Commissioner argues that the ALJ's misinterpretation of the FCE results is harmless because the ALJ articulated other reasons for rejecting Drs. Harron and Llavore's opinions, which are supported by substantial evidence. The Commissioner correctly notes that the ALJ does not rely solely on her interpretation of the FCE report to discredit the opinions of Drs. Harron and Llavore. In support of her RFC determination, the ALJ states that Held received

"essentially conservative" treatment for his pain, and he had improvement after his back surgery in less than twelve months, citing records from the date of surgery through November 6, 2007. R. 30. The ALJ considered Dr. Harron's opinion and found it to be unsupported by his progress notes, objective findings, Held's daily activities, and the evidence of record.

However, because I conclude that the ALJ erred in her analysis of the FCE report, the court's inquiry is no longer whether the ALJ's decision is supported by substantial evidence, but instead, whether it is inconceivable that a different administrative conclusion would have been reached absent the error. See Paxton v. Astrue, No. 1:11cv00070, 2012 WL 3011017, at *1 (W.D. Va. July 23, 2012).

Here, the ALJ's analysis of Drs. Harron and Llavore's opinions is inextricably intertwined with her interpretation of the FCE report. Although the ALJ gave "great weight" to Dr. Harron's findings regarding Held's standing and walking limitations, she found that Dr. Harron's restriction on Held's sitting was unsupported by the FCE report. R. 31. Additionally, immediately after stating the weight given to Dr. Harron's report, the ALJ writes, "Bill Mercer, P.T., assessed the claimant as able to perform light work, with frequent sitting, infrequent standing and walking, frequent forward and overhead reaching, and as able to perform fine hand movements, and operate arm and leg controls." R. 31. Whether Held can perform light work on a full versus part-time basis is a crucial element of the ALJ's decision.

It is impossible to know whether the ALJ's decision would have changed had she recognized that the FCE report limited Held to light work on a part-time basis. Either way, it is not the role of the court to re-weigh evidence from which the ALJ draws an incorrect inference. See Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002). In this case, the Appeals Council remanded the case to the ALJ, instructing her to consider the FCE report and Dr. Harron's

15

opinion and more fully explain the weight given to Dr. Harron's opinion. The ALJ considered only a portion of the FCE report, and used an incorrect interpretation of its results to discount Dr. Harron's opinion. The ALJ then relied upon the opinions of state agency physicians who did not have the benefit of the whole record, and medical expert Dr. Alexander, whose findings are ambiguous, and who did not consider a relevant portion of the record. Thus, the ALJ did not properly follow the mandate of the Appeals Council to specifically consider the FCE report, and reconsider Dr. Harron's opinions in light of the evaluation, an error that cannot be considered "harmless."

## **Vocational Expert Opinions**

Held also argues that the ALJ's decision that she can perform jobs at the light exertional level reaches a conclusion that is inconsistent with the vocational expert's opinion. Held also argues that the ALJ failed to properly address the opinions of Held's retained vocational expert. Because I am recommending remand for the ALJ to reconsider the evidence of record and her RFC determination, it is not necessary to address Held's arguments with regard to the vocational experts. Upon remand, the ALJ will properly weigh and consider any vocational expert opinions as required by the regulations.

## **CONCLUSION**

For the reasons set forth above, it is recommended that the defendant's motion for summary judgment be **DENIED**, Held's motion for summary judgment be **GRANTED IN PART**, and this case be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

16

objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

      Enter: January 28, 2014

      */s/ Robert S. Ballou*

      Robert S. Ballou
      United States Magistrate Judge